Good afternoon, ladies and gentlemen. This is the time set for rehearing on Bonk, the case of Andre Hyundai, economy fuel litigation. May proceed. May it please the court, my name is Jimmy Feinman, I'm from Lynchburg, Virginia, and I represent Linda Scott and the approximately 16,000 Virginians that she represents. I think what this case presents for the court is two ends of the spectrum, with the Handling case on one end of the spectrum and this Hyundai case on the other end of the spectrum. Handling shows how a nationwide class settlement case was certified. Hyundai shows how a nationwide settlement class cannot be certified. In Handling there were class representatives from every state. Extensive litigation had occurred to establish the scope and the nature of liability. The settlement was negotiated after extensive litigation had occurred in several key states, an amended master complaint was filed to everyone's satisfaction, and the objectors admitted the predominance requirement of Rule 23 was met. In Hyundai there are class representatives from only 18 states who own 17 out of 30 class vehicles. The only litigation that occurred outside of the certification and approval of the settlement was in the Espinoza case. What that produced was a strongly worded ruling that there was no predominance because material differences in the 50 state laws would definitely make a difference in the litigation. Then a settlement was reached quickly without the benefit of adversarial litigation. In Hyundai the objectors do not stipulate to predominance and Hyundai asserts there is no predominance. That's an excerpt, record excerpt, page 1547. Hyundai itself says there is no predominance. Mr. Fudd, can I ask you this? You, I take it from what you're saying and from what happened below, had there been no settlement in this case, on this record you would contend that there could be no litigation class either, correct? No, no nationwide litigation class. Certainly there would be... There could not be a nationwide litigation class. There could not be a nationwide settlement class on the basis of... No, I'm not asking about settlement, I'm asking about litigation. I'm sorry, I meant to say litigation. Okay. Okay. If there could not be a nationwide litigation class and your clients can opt out of this settlement, how were they injured by it? Well, as the Supreme Court has said and the majority opinion said, that a settlement negotiated without the ability to litigate is something that... But you have the ability, your clients have the ability to litigate. There could not be in your view a nationwide settlement class and so why are your clients injured by the settlement class? For the reasons that I just said, the policy of settling class action cases has to come before... I mean, that doesn't come until there's a certification. The certification has to meet the stringent requirements of Rule 23. Let me try this again. We're missing each other someplace. Yes, sir. Let me say I agree with... Let me just start with the assumption that I agree with you. I'm not saying that's what I'm going to rule, but just assume that I agree with you, that a settlement class could not have been certified, national settlement class, and a national litigation class could not have been certified. So my question is, since your clients are now free on their own to litigate, how were they harmed in this case by the district court's ruling? Well, because all their cases would be dismissed if they did not opt out and then they left... Their rights have not been protected by the class representatives and the class council. These people had the right to sit back... I'm sorry. Go ahead, please. I'm sorry. The 16,000 Virginians had the right to sit back and do nothing, confident that their rights were going to be protected. That's what the Phillips patrolling case says. Even though, in your view, they have no individual claims? I never said that. Well, you said their cases would be dismissed. Well, if you asked me what was the harm... Well, I'm trying to understand the practical... Why are your clients worse off today than if a settlement class had not... And I'll defer to Judge Fletcher after this. If a settlement class had not been certified? Because they didn't get the benefit of having a class certified that could be tried for their benefit and then negotiations reached based on that threat of litigation, real threat of litigation. That produces something. I'm not just saying it. The Supreme Court said it. That produces a true settlement, an adversarial relationship. And they were cheated of that and they had the right to get that. Phillips patrolling says they have the right to sit back and have their rights protected. Jimmy Fineman didn't make that up. The Supreme Court of the United States made that up. And so that's where they've been harmed. They had that right and it would be destroyed through this process. But I think as a practical matter, the answer to the question that Judge Hurwitz asked you is that you're concerned that a fair number of your clients will accept this settlement rather than opt out. And so the number of clients left for you to bring a litigation class who opted out is smaller. Am I wrong about that? I think so, Your Honor. I think that the record shows, and I put it in the record, the emails that I received from hundreds and hundreds and hundreds of them that said they didn't want this. But they can opt out then. Well, opt out does not substitute for a proper certification under Rule 23. But if they opt out, then they can bring a Virginia-only class action, which is what you've been seeking all along. Well, that may be possible, but that doesn't substitute an improper certification under Rule 23. That even Hyundai says in the record the predominance requirement wasn't met. It doesn't substitute for that, Your Honor. I'm sorry. Well, you were insisting in the district court that they couldn't. I thought what you were saying is that they would have a limitations problem if they opted out. Well, that was not true anymore. No, that is a very significant element in this case. Under Virginia law, as California law, they have the same law. You didn't answer the question. I am. There may be something wrong with it because it was the obvious answer if that was your answer. I haven't finished my answer. I'm sorry. I speak slowly. I apologize. Can I ask you to clarify your answer because I'm not sure that I am quite getting it. And it goes to the same area of questions that you've already been asked. When the district court asked for supplemental briefing and the district court particularly pinpointed to the need for choice of law analysis, you had the opportunity to file supplemental objections as well as send a reply to class counsel's brief addressing the same question. And as I understand it, the problem raised was that the focus of your argument was that Virginia law provided for different remedies, and so, therefore, a Virginia subclass needed to be created. Is that correct? Well, we said that there were several elements to our position on the choice of law. Right. And the district court then specifically addressed that. And the district court pointed to the statute of limitations issues and explained the opt-out option. And basically, the nub of the district court's analysis on this point was that many Virginia class members no longer have access to an alleged substantially better remedy. And so, in that sense, the district court felt that your arguments regarding the differences in Virginia law didn't defeat predominance. Can you explain to me where the district court erred in that analysis? Well, the district court brought extensive opinion, saying clearly that there was no predominance, as Hyandai submitted and as they showed, because the laws of the 50 states made a material difference in the outcome of this litigation. Therefore, there was no cohesiveness in the class. That's what the court ruled. It's in the records there. Now, when confronted with a settlement, the court did what Amchem says it can't do. It relaxed the requirements of Rule 23 instead of heightening the requirements of Rule 23. Our position on the harm in the choice of law was, one, there was a contractual provision that stated in hundreds and hundreds of cases that we showed that Virginia, that these contracts had a choice of law provision that said Virginia law applies. As I understand it, Counselor, it relaxed the predominance analysis in the sense that now you've got a settlement class. And in the settlement context, variations in state law that would impact manageability, that's no longer a concern in the settlement context, and I think your briefings conceded that as well. So, again, where was the error in the court's analysis? Was it in its failure to analyze all of the other states' laws in addition to Virginia law? Well, who I represent are the Virginia subclass or the Virginia class. The Linda Scott complaint only alleges a Virginia class, and that's who I represent. I didn't attempt to speak for everyone. Did the court rule on your contractual choice of law issue?  No, the court ruled that it didn't have to do any choice of law analysis in the settlement context, which is error. The certification requirements are the exact same. So in response to my question, the district court did analyze the variations in Virginia law that you identified. The error is the failure to analyze other states' law. I didn't say that. No, I don't think that the court ignored the differences in Virginia law as well. If the court rule on a law applies, did the court say California law applies or what? No, the court said it does not have to do a choice of law analysis and refused to do one. That's what the court did. So going back to- So Virginia law would apply as to your clients. Correct. But as to the others, it didn't. Now, sitting in diversity, the federal court applies the conflictual law of the state in which it's sitting. California conflicts of law rule is that you assume California law applies unless somebody objects. Now, when it was just Espinoza, we had an objection. So Judge Wu looked at all the laws of the different states. At the settlement stage, the only objector is you. Nobody else is saying that they're supposed to look at any of the law. So under California law, as I read it, under California conflicts law, the judge is supposed to assume that except for you, who asserted Virginia law, the law is California law. That's California conflicts law. Well, I agree that that is California conflicts law, but I think that there are other elements that the court has to consider. First is the Phillips-Patron case that says there are constitutional limitations to application of state law. That overrides California law. That's a constitutional limitation. And second, as a point of- I don't read Phillips that way. Well, you know, it says that the constitutional limitations on choice of law- I've read Phillips many times. Of course you have. Well, I think that constitutional limitation overrides everything. And also, as I've said in a letter that I wrote to the court, that when the Virginians are transferred here in an MDL process, the Erie Doctrine says that the choice of law from the state that they were transferred to has to be applied, or the MDL process is ruining the Erie Doctrine. And I put that in a supplemental letter to the court. So that's another reason like that. But your Honor said if there's an objector, we are the objector. We did object, and we showed that we had a contractual provision that should have been honored under California law. We had a constitutional argument that should have been argued. We had an MDL argument that should be argued. And the differences were in the money that Virginia law allows and the standard proof that Virginia law requires, and also on the American pipe tolling issue. California and Virginia have the same law on American pipe tolling. If a class representative does not assert California causes of action, the certification of that class action does not toll the statute of limitations. In this case, the only causes of action that were asserted were California causes of action. Virginia has the same law that California has. If Virginia causes of action are not asserted, then there is no tolling for the individuals to opt out. It's a significant issue. So, no, I never said that these claims would be barred. What I'm saying is we have to have the subclass so that we would have the benefit of tolling, just like the Californians would have the benefit of tolling. I'm sorry. How would the subclass solve that problem? Because the class representatives of the Linda Scott Gentry lawsuit would be certified. Therefore, that subclass is certified, and that subclass asserted Virginia causes of action. And, therefore, the statute of limitations is tolled under the Casey versus Mark case in Virginia.  California does not recognize the tolling of an individual's claim if a class action doesn't assert California causes of action. And it's the same in Virginia. So, here, all you've got are California causes of actions asserted. That tolls the statute for anybody in Virginia. I mean, sorry, in California it wants to opt out, but it doesn't toll it for Virginia. That's the end of it right there. And the reason why, your assumption is that if the, because the Gentry named plaintiffs had timely causes of action, that's why? Yeah, from the date the Gentry complaint was filed, the statutes would be tolled as of that date when that class representative is certified, and if that complaint states Virginia causes of action. That's not my assumption. That's what Virginia Supreme Court said in Casey versus Mark. Not for members of the class. Yes, for everybody in the class. That's correct. If it's for everybody in the class, then what's the problem? Well, we didn't get certified. We got dismissed. When the court here certified the settlement class, it also dismissed all the other cases. And therefore, the Gentry named representatives never got certified as the recognized class representatives asserting Virginia causes of action, and therefore, if anyone tried to opt out, it would be, their statutes and limitations are not tolled. Can I ask you a question about the settlement? What law governs the settlement agreement? Well, I don't think there is a settlement agreement until it's certified. I understand. I understand. The settlement agreement that was proposed in this case and that the judge eventually approved, what law governs it? Well, I think that the settlement agreement couldn't, I think you're putting the cart before the horse. Well, I'm putting the cart before the horse, so start with the cart. There is a settlement agreement in this case. Is there not? Let's start with the horse. No, no, no. I get to position the animals. There is a settlement agreement in this case. Is there not? Well, it depends on whether the court approves it. Okay. Let's assume in whatever world you want to assume in that the court has approved it. What law would govern that settlement agreement? Well, I think federal law would control it. Federal law would control it? It's governed by the choice of law for the settlement agreement. If I were interpreting the settlement agreement as a judge and somebody said, judge, you have to do a choice of law analysis, my correct answer would be federal law. I think that it would be controlled by federal rule 23, right off the top of my head. That's a procedural. What substantive law governs the settlement agreement? I'd have to think about that, because what I have focused on is what law affects the rights. I understand. That's why I'm asking you different questions. Now, let me give you another hypothetical here. Let me just ask you to assume that the settlement agreement expressly chose California law to govern it. Okay? I'm with you. I hear you. Why can't the parties in a dispute in which there are many different possible choices of law agree to a choice of law in a settlement? Well, I'm saying that they probably could, but they can't do it for people that they are not in a cohesive certified class with. That's what Amchem said, that, you know, if there's not a cohesive class. Amchem says parties may not choose choice of law in a settlement agreement? No, it says that other parties cannot be bound by consent given by somebody who doesn't have the same legal rights that they have. That's what it says. But if you have the right to opt out of the settlement agreement, why are you bound by it? Opting out does not substitute for Rule 23 certification analysis. I'm sorry, Your Honor, it just doesn't. It doesn't. You can make that argument all you want, but it's- Well, I'm not arguing. I'm asking the question. It's your argument. Thank you. I'm sorry. It seemed like there was more. I apologize. And by the way, you don't speak slow. Well, I think slow then. All right, so the- You've answered my question. Okay. All right. So I'm going to go through here. But I do think that what's presented is a spectrum with Hanlon on one end and Hyundai on the other end. Hanlon obviously allowed the certification of a nationwide settlement class. But the facts and what the court wrote in that case and the commentators have said, there were safeguards present in that record that justified what the court did in that case. In this case, there are not those safeguards. I apologize. It seemed to me that the court in the Hanlon did make a choice of law analysis that the different issues were not significant enough to not certify the class. But I don't- And that's different from this record. I think you're right. And that's different from this record completely. And Hanlon limited itself to the facts of that case. I think so, yes. Let me ask you this as a matter of law. We know from AMCAM that in a settlement class, the court must give heightened scrutiny at the approval stage and the certification stage to the criteria 23A. We also know that in a settlement class, the court can give less scrutiny to the factors or the factor of 23BD. Trial manageability. Right. What about the factors of 23BA through C? Is that just ordinary scrutiny? No, it's heightened. Heightened. So why is it heightened? Because the court has never said heightened. It said heightened is to 23A. I'd have to get the exact AMCAM. But what it said was all the other safeguards. In the rule. In the rule. I'm over here. She said all the other safeguards in the rule. In the rule. Not specifying A or B. That's right. And, you know, 23B3 is obviously part of the rule. Those safeguards of cohesion. Everybody recognizes that predominance is there to guarantee that the class that's going to be certified is cohesive enough to justify adjudication by representation. It's got to be heightened. Counsel, if we shift back to the district court, are we asking the district court just to compare California and Virginia? Does it have to do a 50-state survey? Sir, I just have to tell you the truth. I just did everything I can do to represent the people that I represent. Are the differences between Virginia and California law so significant that it is clear that the court shouldn't certify the class? Not without a Virginia subclass. I have to tell you the differences between California law and Virginia law on this are really pretty unimpressive. I'm sorry you feel that way, Your Honor. Can this court reach that question and decide that? Yes, I think it probably can. Well, the district courts do, in essence. I mean, he said whatever differences there are, they just are not significant enough to matter. No, I don't think that that's what they said. If you read the opinion that he wrote, that's in the supplemental excerpts. I did, and I read it, and that's exactly what he said. No, Your Honor, in the Espinoza, the exact same issue. I'm not talking about Espinoza. But that's what this case is. No, it isn't, because, just a minute. In Espinoza, at least a chunk of the putative differences, the ones that Hyundai cared about, were the ones that favored them, right? In other words, they wanted to be sure that they could raise defenses that were available under different state law that wasn't available in California. And that has nothing to do with your interest at this point or with the interest of litigation of the settlement class certification. Is that not right? That's my understanding. In Maza, for example, the emphasis was on defenses that were different in different states, possibly. Well, what the court ruled here was that the remedies made a material difference in the outcome of the case. And to go back to your question, Your Honor, about whether this court can reach that decision, I don't think, I don't understand your question now. And I think when the district court refuses to do it, even though it did do it and said that, you know, there are material differences, I think that's why the district court ruled it doesn't have to do a choice of law analysis in the settlement context. Because it knew what it had already ruled, that this case is on all squares with Maza and is controlled by Maza. It didn't matter because it would be worked out in the fairness hearing. He said that he recognized the differences in Virginia law but thought he could address them as part of the fairness hearing, which Amcan said you couldn't do. That's correct. Am I right on that? Well, he did, the district court did make that reference, and that cannot, that is forbidden. I mean, the certification has to come first before, you know, you can get into a settlement. You have to get a certification. What do you think is the key difference between Virginia law and California law that would make a difference to your plaintiffs? Well, I think the availability of minimum $500 in damages, the minimum $1,000 for willful violations, and treble damages for willful violations is much better than the California remedy. And the ability to opt out, the constitutional right to opt out has to be protected. And therefore, a Virginia subclass has to be certified because it's the only one that asserts Virginia causes of action. Did something happen to the post-November 2, 2012 claims that the district court carved out? The district court thought there was a potential for that to still be viable and go forward. Did that happen? No, Your Honor. I don't believe that's part of this case. This case is all pre-November 2, 2012 claims. Right. No, I understand that. But as a factual matter, was there a separate class then that went forward for the post-November 2, 2012 action? No, Your Honor. That's not part of this case. Do you want to reserve for rebuttal? I do. I do. Thank you. May I please the court? Steve Berman on behalf of the appellees. I apologize. I just finished a rather long trial this week, and my voice is dropping. And if you can't hear me, please let me know. I would like to address four issues that I see before the court. The first is, was the settlement fair? And the settlement, there might be some confusion, and so I want to clear that up. The settlement delivered an additional, at least, $97 million to this class. And that was an outstanding result in terms of compensation. The second issue I'd like to address does... Judge Cassano. Yes, Judge Clark. I may have misunderstood something there. I thought before the defendants got sued, they had already instituted a lifetime reimbursement program where all you had to do was go to the dealer for service, or you could collect money if you didn't want to go to the dealer for service, and you would get the difference between what you would have spent on gas, had their representation been true, and what you would have spent on gas under the false representation. And in addition, you got an extra 15% for inconvenience, and that all the buyers of the cars got out of the settlement was they could take an extension of time to enroll in that lifetime reimbursement and an option of taking it in cash instead of whenever they came in. Yes, Your Honor. There was a preexisting program. Am I right that that's all they got? No. Let me characterize it this way. So as a result of the settlement, there were $50 million of new claims filed, and in that $50 million bucket, you could, excuse me, $57 million, you could get the lump sum payment. And the reason we felt there was a real benefit to the class was under Hyundai's program, you have to drive your car in, periodically get the odometer checked, and then keep coming back through the lifetime of your ownership. Some people live far away from dealerships. They didn't want to do that. And so of the new claims that came in, there was a nine-to-one selection of the lump sum payments over re-enrolling in the program. So it shows that this was really meaningful for class to do these lump sum payments. Second, Hyundai cut off. So what you're saying is they could get the same money, but they get it more conveniently under your settlement. Actually, they get a different calculation. They get a calculation on their lump sum of a typical driver's gas mileage and payments. And so it's a little different than if they actually went into the dealership. But again, that was not available to people. And people don't want to wait four or five years, and they don't want to keep coming in the dealership. That's one of the flaws we saw with the half-employment. Did they have to wait four or five years? I thought whenever they came in, they could just get the odometer reading and the money. That's right. But they had to come in to get the money, and a lot of people just didn't want to do that. That's why, again, so many people on a nine-to-one ratio selected the lump sum benefit. In addition, another $40 million came in because Hyundai closed the program. And we came in and said, you closed it too early. We need a new round of notice. That was the extension. Yes. Okay. So we think that the settlement did create – Also included used cars. I didn't understand that because they don't see those mileage numbers that are on the window of the – with the sticker when you buy the car. Well, the Keogh lawyer, Your Honor, wants to answer your question on the used cars, so I deferred to him. That's the way we broke up the argument. You were saying there's four areas. I'm over here. I'm over here. I'm sorry, Your Honor. I'm still over here. Oh. You were saying there's four areas you wanted to discuss, and one was the settlement. Yes. The second issue that I'd like to discuss is I think in the context of a – the judge's ruling on class certification, that the difference between a settlement class and a litigation class does matter. The third issue in that regard I want to address is the Espinosa opinion and what that portends in terms of the judge's ruling on the settlement. And the last issue, and very briefly, is attorneys' fees. Now, does settlement matter? I think that Judge Wu felt, and I think he was right, that under Hanlon it did matter whether it was a litigation class or a settlement class, and he got that interpretation. Hanlon's a Ninth Circuit opinion. Mazza's a Ninth Circuit opinion. We are on bank. It might be more productive to discuss de novo. Okay. That's right. I think there's a difference, and there should be a difference, between a judge trying to consider a litigation class and a settlement class. Doesn't Amchem say that the only difference is that manageability is no longer relevant and that heightened examination of all the other factors is required? Amchem says it in plain English. And Judge Wu gave it heightened attention. He starts out in his tentative of June 26th. He reads Amgen just the way you did, Judge Kleinfeld, and he says, I have to give this heightened attention. So we don't have to look to Ninth Circuit case law. Amchem tells us there's a difference between litigation and settlement, right? Well, I think there is Ninth Circuit case law that you can reconcile. I appreciate that, but this wasn't a trick question. Okay. The Supreme Court told us as much, right? Yes. Yes. And so what Judge Wu did is he said, okay, look, I'm looking at a new beast. It's no longer a litigation class. The defendant wants to settle. It's not raising state law issues like reliance that might present certification. I don't see any huge variation in the remedies or – But is your position when you get to this point, when it's becoming – we're not in Espinoza anymore. Now we're in the MDL. And at that point, is your position that the judge didn't need – the district court didn't need to take into account the gentry objection and do the comparison with California and Virginia? Oh, I think he did. They raised it. The answer to my question is, again, I'm not trying to be difficult, but – Yes. He has to do that, right? Yes. Because the gentry folks are still there in the MDL, and they're raising the objection, and it has to be dealt with. Yes. Okay, thank you. Did he rule on it? Because as I read his opinion, he said, notwithstanding the Virginia objectors, it doesn't matter because it will all come out in the fairness hearing. No, I read his ruling a little different. So where did he rule and say, I've compared Virginia and California law, and I think notwithstanding the contractual choice of law provision in the Virginia contracts and notwithstanding the government interest test, I think California law should apply? He addressed that issue twice. He addressed it on June 26th, and he addressed it on July 24th. July 24th, that's the order that he issued, and he called it the handout, right? Yes. And he noted in that order, and I think it's significant, that the gentry plaintiffs had dropped their remedy argument. They dropped the argument that there was a conflict between California law and Virginia law on the remedies, and he moved to their argument on the statute of limitations. So one of the issues I have with the criticism that one might make of Judge Wu is, if you look at his orders of June 26th and August 21st and July 24th, he repeatedly asked, please come forward with any material differences. I thought the gentry plaintiffs had made it clear that they maintained and wished to continue with their argument that this different law mattered, $353 for members of the class and no California statutory minimum versus a $500 statutory minimum in Virginia, which was easily doubled or tripled. Well, if you look at the ER at 63, Judge Kleinfeld, Judge Wu made a finding that they had withdrawn that argument. Was the finding supportable on the evidence, or was it plainly erroneous? I don't think there was any contest at that point in the record anymore from the gentry plaintiffs on the remedy issue. They completely shifted at that point to their argument about the Virginia subclass. And Judge Wu spent a lot of time, again, this is a judge who said, right now I don't see a material conflict. I know you don't want me to talk about Hanlon anymore. I won't. But he said... I'd like you to talk about Hanlon. He really likes Hanlon. But can I ask you a question about this? I'm going back to this July 24th order, the handout. Yes. Was it literally handed out before argument? Because he asks to please respond to this. I wasn't there. It was handed out. Yes, Your Honor. Okay, so what I have is SER 9. The gentry plaintiffs now appear to oppose the class certification settlement approval on different grounds than they previously did. And then he goes on from there. So if this was literally handed out prior to the argument or maybe not that day, but he's inviting comment. Is there anything in the transcript that shows that the gentry folks stood up and said that the representatives stood up and said, this is not correct, that we're not doing this shift? I couldn't tell you. I can't find it in the record. I couldn't tell you off the top of my head, and I don't want to make a guess. Okay, all right. Well, if you get back to Hanlon, could you also talk about Maza? It looked to me like there were bookends, and I need to hear about those two of them. My view of the bookends is if you have a litigation class, you have to make a showing that California law applies. And that requires extensive work. On my part, it's class counsel. I have to come in. I have to show why it applies. I have to show there are no material differences. I totally agree with that. It's something that we do all the time nowadays, and it's a lot of work. I noticed in the escalation... No, I don't really see where a lot of work counts much. When you're talking $9 million in attorney's fees, which is, I think, about what your award came to, doing 50 state surveys and doing a bunch of work or having a lot of young associates do it for you, that doesn't seem to amount to much compared to $9 million. I'm sorry. I'm back over here again. You're conceding you would have needed to do this work had the case proceeded as a litigation class. Is that right? Yes, ma'am. Okay. So what law governs the settlement in California law? Does it say so? Yes, it does. It says disputes will be... There's a dispute resolution provision in it, but is there a governing law provision in it? I couldn't say off the top of my head, but my memory is that the intent was that California law... Well, I mean, it seems to say it had that intent reading it, but I was looking for... Did the parties opt for California law in the settlement? Yes, sir. Do any of the cases we're talking about prevent you from doing that? I'm not following your question totally. Sure. The Supreme Court and NCAM and the various cases that this circuit has decided, which may or may not be accepted by the Ombud Court, do they prevent parties from opting in a settlement class for a particular state's fault or government claims? I'm sorry. I'm still not... Sure. Wait. Let's assume there was a dispute between you and Kia and Hyundai about which state law applied. Yes, sir. You thought California, they thought 50 states, and you were fighting about it. Could you settle that dispute and settle the case by agreeing to apply the law of one state? Yes, and I think that happens all the time. Now, my question is, I can't find anything in the case law that prohibits that. Do you think there's something in the case law that allows that? I do not, and that, again, I think heightens the idea that there's a distinction between a litigation class where you're fighting all these little issues, is there reliance in this state, is there some other issue in this state, and a settlement class where you're not fighting those cases. So let me ask the question differently. Can a district judge find predominance where it didn't exist in a litigation class in a settlement class because of the choice of law by the parties in settlement? Yes. My position is yes. Because the battleground, using Ampion, the battleground of the trial issues, which are preventing, perhaps, or creating this contest in the litigation over settlement, are gone. So are you saying that the court does... Over here. Are you saying the court doesn't have any independent obligation to determine whether legal issues predominate, which requires a choice of law analysis? That seems contrary to our precedent. I think what the district court's obligation is, absent a party raising a conflict issue, because it's on the burden of the party proposing someone else's law to raise it, I think the district courts, in my experience, look at the briefing and try to decide, under the proposed settlement, is there a constellation of core claims here such that I can certify the class without delving into a state-by-state analysis? On the attorney's fees issue, what was the justification for application of the multiplier? Well, on the attorney's fees issue, we asked for a very modest multiplier of 1.22. What was the basis of asking for the multiplier in the first instance? The risk undertaken in the case, the complexity of the case, and the length of the case. And Judge Wu had the opportunity to watch us work, watch us work through the settlement, watch us work through the extensive notice campaign that we put out, and the development of all the websites, and the way this was going to give people full recovery, and he was satisfied that we did a good job. Did Judge Wu specifically address the value of the settlement as compared to the amount of fees requested? Well, he did. He didn't, first of all... Where in the record can we look to see where the judge compared the value of the settlement to the amount of fees requested? I stand corrected. He did not do that. All he did was to go on a lodestar approach and do the multiplier approach, and I don't think he was required under the case law to go and then do a percentage type of analysis because we weren't basing our fee application on a percent of the recovery. Because what we wanted to do was to go out and get as much as we could for the class, not know what we're going to get paid, and then have to fight with the defendants because we thought that would be the best result for the class. We were not in any way trying to benefit from what we got for them. And, in fact, the fees were hotly contested and some of the fees were cut down. So this was not some sweetheart deal. Counsel, with respect to Mazda, is it your position that the government of Mazda does not apply because nobody really asked for the differences in the state law? There was no analysis of that, and therefore Mazda's requirement was somehow waived? No, our position is there's a difference between the Mazda requirements in terms of doing a state-by-state analysis in a litigation class versus a settlement class. Okay, so how do you reconcile Hanlon and Mazda? I think that's what a lot of us are struggling with. We've got two precedents, one that seems to deal with settlement, one that seems to deal with litigation class, but there's a lot of conflict between those two. How would you reconcile, in the facts of this case, the application of Mazda and the application of Hanlon? Sure, and Hanlon, if you look at Hanlon, what Hanlon said was, you know, there are minor differences in state law claims and remedies in the context of a settlement where you don't have to actually litigate these differences on a state-by-state case. You can go ahead and certify. And in this case, do you believe that the minor differences were actually considered by Judge Wu, or he just assumed them because nobody raised them? No, we generally, in the class briefing, showed, you know, that consumer protection statutes in most states are similar, right? And we had argument on these issues in the context of Virginia. And I don't think that Judge Wu had an obligation, sua sponte, to try to figure out whether there are conflicts all over the place. Well, the predominance issue is determined under Mazda depending on whether there are these differences. You said that in your pleadings, you indicated that there weren't any. Is that correct? We didn't say... I don't say that there weren't any, but what we said was, and what Judge Wu found, in this case, when they came out and said the Moroni stickers are false, it simplified his analysis because you have a false statement. So he found two predominant issues. False statement, did Hyundai and Kia know about it? And those bound the class together such that he found predominance. When you have that kind of factual record, I think a judge can find... So you think that Mazda is satisfied because the predominance was satisfied in this circumstance by virtue of what you just described? That's correct. And the other thing that Judge... Well, I see my time is way over. Thank you very much. I have one question, if I could ask it quickly. After Amchem, I think it's what we do in a settlement context with 23B3B. And my question is, does 23A get heightened scrutiny, or does that extend to the other parts of 23B3? I think all the parts. Thank you. Thank you, counsel. Good afternoon. Sean Morgan for Hyundai. I've got 10 minutes, and there were a lot of loose ends left, and I'm going to try to pick these off as best I can and then make an affirmative point or two. Let me start, Judge Hurwitz, with your question about the settlement agreement. Section 16.3 has a California choice of law clause. It is not merely about disputes. It is that the substance of the agreement is governed by California law. That is relevant. The Sullivan case from the Third Circuit found that essentially class settlements are private contracts that are extended to the class and that the constitutional element that the court is considering is really just a due process mechanism by which absent class members are notified, the notice and the opt-out procedures, but that it's perfectly acceptable to have a class settlement governed by a contract that specifies a single state's law. How does it work, counsel, since the settlement agreement had not yet been finalized? How does California law affect it, basically, at that point? It's not approved yet. Do you still go by California law? Well, I think Judge Wu backstops his opinion, not relying on the contract, but also through the traditional conflict of laws analysis, and I'm going to move to that in a minute, but I want to finish on the point that Judge Hurwitz raised, whether there was a Ninth Circuit case that addressed this issue of a contract provision with choice of law. In Split Note 2 of MAZA, the court pointed out that Honda had had another nationwide class action that was settled, and California law was applied to that case. And the court found no conflict between the fact that it was denying certification of the litigation class and the fact that approval had been granted to that nationwide settlement. And if you look at the underlying agreement in that other case in Split Note 2, it, too, had a California...  that a particular state law applies, you mean to the settlement. You're not really adjudicating what the underlying law is, because it doesn't matter at that point. What you're saying is, if you're trying to litigate anything about the settlement as a contract, you apply California law, no? Well, correct. The way the Sullivan Court interpreted that was what the court is applying to the class constitutionally is the settlement agreement. You don't have litigation going forward. This isn't an agreement that as to the underlying causes of action, it was California law that applied. It was an agreement that the settlement, which is the governing terms of the resolution of this, would be governed by California law. Right, and some logic problem there, I think. We're talking about treating the settlement as a binding contract when we know that a settlement can't be a binding contract until it's approved. And then we're talking about measuring whether approval is right by a choice of law provision in an unapproved settlement, so it's not a contract, instead of an undisputedly binding contract that gives all the millions of Virginians the right to statutory minimum of $500, doubling and tripling it. I don't see how without an agreement that's approved and an explanation of why such an agreement should bind the Virginians, the millions of Virginians, I don't see how you'd get there without some explanation of why Virginia law doesn't control. And I want to be clear, Your Honor. We're not resting on a settlement agreement as a basis. I wanted to answer Judge Hurley's question. But I think you've answered my question the same way your colleague has. The settlement agreement is governed by California law. Correct. But there's nothing in this record that indicates that in settling, the parties opted to apply California law to the claims of the plaintiff class. Is that true? That's correct. Although the three cases that were settled, Brady, Espinoza, and Hunter, were all pleaded under California law. Right. Correct. Judge Wynn, you asked a question about the post-November 12th purchasers and what had happened had there been subsequent litigation with respect to those. I think it's a relevant question because it goes to do Virginia consumers have adequate remedies, better remedies. And, in fact, Mr. Fineman filed mass actions on behalf of more than 1,200 Virginia consumers, including seven of the opt-outs from this case. And those suits, all 1,200 of those individual suits, were dismissed on the merits affirmed by the Fourth Circuit. So, in fact, when those claims were pursued, they did not have better remedies at all. They got no remedy whatsoever. And on what basis were they dismissed by the Fourth Circuit? Failure to plead a claim. Okay. Not statute of limitations? Not statute of limitations. Judge Christin, you asked a question about the July 24th handout and where was the shift. This is important. What happened between the June 26th hearing and the July 24th hearing was that the court specifically asked for supplemental briefing on the choice-of-law issues. And it was in that briefing where the shift took place. And that's why, as Judge Liu's practice to give out the tentatives before the hearing, the judge was able to say, I've seen a shift in the briefing. So, if you look in the record at the supplemental briefing, that's where you'll find the shift. Forgive me. That's the part I did understand. Okay. What I was inviting is, having received this and very clearly signposting that he observed this shift, whether the gentry plaintiff said they certainly had an opportunity to literally or figuratively stand up and say that is not our position, and I can't find in the record where they objected to this observation about the shift in their position. Correct. No objection to Judge Wu's characterization of it as a shift. Thank you. I want to address the used car class, portion of the class. Sure. And again, Mr. Azadian is going to cover that if the court will indulge. I just wanted to follow up on, actually, one of your points, Judge Ikuda, which is with some collapsing done of the fairness analysis with the predominance analysis, and I think it's important to go back to the June 26th minute order where the first preliminary approval order where Judge Wu lays out in separate sections why class certification is satisfied and then later does the fairness analysis. So, the class certification analysis is not only logically separate, it's antecedent, and to answer your question, Judge Klein felt completely not dependent on any aspect of the settlement agreement. He finds that all of the factors of Rule 23b-3 are met without... The court rule on what law applies. So, the way the choice of law was handled was... I don't know, because I believe in the briefing it was undisputed that the court never made that ruling. Made which ruling, Your Honor? It never ruled what law applied to the class. Consistent with Maza and Porconi, the court ruled it didn't have to choose between Virginia and California because it didn't find that there was a material difference in the context of this case. And the way California choice of law works under Porconi and the Washington Mutual case is  but you don't need to choose unless there's a material difference in the context of this case. Maza says that at page 200. And the fact findings that Judge Wu made in the preliminary approval order were that there was no material difference in the context of this case for reasons... Because of the fairness. No, not because of the fairness, because he found as a factual matter that they were unlikely to prevail in Virginia because of statute limitations and they were unlikely to prevail on any of the heightened remedies. And on the remedies issue, California law is arguably broader. It allows for punitive damages which could well exceed the enhanced remedies that Virginia gives for willfulness. It could, but it's a much more demanding standard. Correct. Although Judge Wu found, as a matter of fact, that either standard was unlikely to be met in the facts of this case. Which is why he didn't find Virginia offered superior remedies. Therefore, he didn't need to decide between the two laws for purposes of certification. And he didn't go on to any other possible conflict with other state laws because no one asked him to. Well, he didn't need to because nobody met their burden to do it. In fact, Judge Wu did go on to say, I think recognizing that he was presiding over an MDL with cases from all other jurisdictions, he did say, I've also surveyed the law in this area and found that many cases find that these differences in consumer laws are not sufficiently variable to impede settlement. And he cites many of the cases that have approved settlements in nationwide cases. So I don't feel he needed to do it, but he did it. He backstopped it anyway. Wait a minute. You think he did what? I thought Judge Bernstein asked you whether he did the Virginia analysis and you've taken the position that he did, and then you seem to be saying that he did more than that. Yeah, he went on. Can you give me the ER site now? Sure. We are looking at page 63 of Scott Excerpts of Records. And so, again, I think this is in the nature of backstopping. Even though no objector had come forward to make these objections, he says, quote, even in the presence of objections regarding differences in state law, courts often conclude that approval of class certification and settlement is appropriate. And then he cites several cases. So, again, I think this is – But is that what you're citing for the proposition, which I understood you to be responding to Judge Berzon's question with, which is that he actually did that analysis there? No, I'm saying that he considered other states, but he didn't do a full 50-state analysis because he didn't need to. But I'm saying he was at least cognizant of this issue and tried to address it even though I don't feel that he needed to on this record. Thank you, counsel. Mr. Zedian? Good afternoon. Everybody wants to hear about used cars. I was just about to say. It looks like I'm going to be addressing used cars. All right. I represent Kia Motors of America, and with me today is Tian Weihong of my firm. Including used car owners in the settlement is not problematic, as the second and third circuits have held in the settlement context. I can see where buying the Amcam analysis, it could very well be. I mean, this settlement, it's not just the plaintiffs, the car buyers getting something. It's also the car manufacturer getting something. And what it's getting is a release and a bar to any claims by anybody in the class. And what you're doing here is stepping in, buying a release for used car owners who never saw the false Mulroney sticker. That seems like just a way to get a broader release, and from the plaintiff's lawyer's point of view, a justification for more attorney's fees because the class is bigger. But it doesn't seem like there's anything to it, except maybe that it would drive down what could be justified for the new car buyers who actually saw the Mulroney sticker. I just, when you survey the decision reached by the district court, I can't see where, including the used cars, does anything to benefit the plaintiff class. It just seems to benefit the manufacturer and the attorneys. And Judge Condo, I think you put your finger right on the nub of the issue right there, because this isn't a typical situation where reliance is being challenged by the correct or the expected challenger of that element for reliance on advertisement. A challenge to the element of reliance, which is what you're talking about, is a challenge that a defendant would make typically in these actions, not a plaintiff. Here, neither Hyundai nor Kia have challenged reliance on the claims that have been asserted in the class action because they are brought within the settlement context. Hyundai and Kia, without admitting liability, and I think that's very important because I understand there's some consensus whether Hanlon applies or not. The court is, of course, sitting on Bank. But the common theme and thread that runs through all of the class action jurisprudence is that settlement context does matter, if for no other reason, because liability falls out of the equation. It also matters, which is why the Supreme Court said heightened scrutiny in Amchem, because the people who are purportedly being represented may not be fairly represented, and it may be just a negotiation between the defendant and the plaintiff's lawyers about how much a release from all claims will cost. And again, Judge Condo, I think you put your finger right on why this is a stark contrast from the Supreme Court's concerns in Amchem, which were really driven by the collusive effects, which were so palpable for the court to see. What I was about to say in terms of liability was that Kia and Hyundai have assumed that those claims of reliance by the used car owners have been met, and that is so even if there were issues with consumers' reliance on advertisements. The thing about Amchem and what Amchem was concerned about with class members forfeiting rights for little or no compensation, here all the affected consumers were all injured in the same way and at the same time, and all are being offered the very same compensation, including the used car owners. I thought the used car people were getting less. That's correct, Your Honor. With respect to the used car owners, the Monroney stickers aren't required to be on the used cars when they are sold. The Monroney stickers under federal statute are for the new purchase of cars. But that's why your answer is confusing, because I think that we understand that. You're saying they were injured in the same way and at the same time, and that's not true. The new cars are the stickers, and the used cars are the advertising campaign. It is different. Your Honor, it is all part of the same common nucleus of facts with respect to reliance. I'll explain. We're not talking about Monroney stickers for used cars. We're talking about the advertising in general, the campaign. That's my point. Your comment is confusing to me, because you said they're all in response to, I think, Judge Berzon's question. You said they're all injured at the same time in the same way. Did I misunderstand what you said? I think I could have been clearer. What I wanted to say was that the element of reliance was satisfied as to all members of the class, whether used car owners or lessees of new cars or purchases of new cars. Some of them relied on the stickers and some of them on the advertising campaign. Or both. Some relied on both. Okay. Yes, a combination of. I see my time is almost up. I wanted to get into the Virginia issues a little bit more. I think what I want to say and – It actually is. Go ahead. Okay. This, I think, goes to Judge Bybee's question. It goes to Judge Akuta's question. I believe it also goes to Judge Smith's question and Judge Fletcher's question. Under the Virginia Consumer Protection Act, that's Section 59.1-204, and I do think, Judge Bybee, that the court can certainly reach the question of Virginia law and whether it does provide that significant distinction or the difference, that it would make a difference in this case, to quote some of the language of the cases. That particular act provides for minimum damages amount of $500 and minimum trouble damages for willful misconduct in the amount of $1,000. You heard Mr. Fineman say that. It does not provide for punitive damages. In contrast, California's Consumer Protection Act does not provide for trouble damages. It does provide for liquidated damage. I think the opposing counsel says $500 is flat for any claim, any successful claim, whereas, of course, the parties here, the consumers, nobody got as much as $500. If I'm recalling right, it was all $300 something or less. So is that untrue? That's how I understood the opposing counsel. Well, I'm going to use your term, Judge Akuta, liquidated damages. Let's assume that there's a contractual basis for the claim. Statutory damages. Or statutory damages. $500, just everyone gets it, which was not the case in California. That would be the difference. So in California, they got $300 or a coupon to get service fees to get a new car. But you also may or may not get attorney's fees in Virginia, and they would be mandatory in California. That's correct. But what's, I think, so crucial to understand, and I think this is where it kind of wraps into Judge Wu's understanding of Virginia law and whether it actually makes a difference in this case for the handful of objectors that base their arguments on Virginia law. Under the Casey decision, under the Second Circuit's decision, the Second Circuit certified these questions of law on tolling of the statutes of limitations for these claims brought by objectors here and to the Virginia Supreme Court. And the Virginia Supreme Court said no, absolutely not. No tolling of such claims. In this case, and I'll leave you with this, Your Honors, in this case, what we are dealing with is not a question of can you get a better settlement for these Virginia objectors. The question is can you get any settlement or any relief beyond what has already been provided in the context of this settlement? And the answer under Casey is clearly no. Would that question even arise in a choice of law analysis? Aren't you just comparing causes of action there? Do you have to compare statutes of limitations as well? I think you're probably right, Judge. But I think if we're talking about a very proactive bench, a very proactive district judge who goes beyond what the record is that has been presented, beyond what the actual There would have been grounds for objectors to come in and complain about the settlement because we were overpaying people from Virginia, right? That could certainly have been a theory. However, I would just say that in this case, this is 115 cents paid on the dollar for all of the claims by the class members. Is there a problem under this Virginia law not provide for attorney's fees? Judge, I don't really know the answer to that question. The Virginia statute says may and the California statute says shall. It's permissive and shall. I think that's right. That's my understanding. Thank you, Counsel. Thank you very much. Any rebuttals? Thank you, Counsel. Thank you. Keir was not involved in the Gentry or Scott litigation, but they're speaking to it. Trouble damages are a form of punitive damages. I don't think that his representations about Casey versus Mark are correct. What Virginia Supreme Court said is that there's no tolling unless, unless, and that's the part he left out, there is a recognized class representative who has asserted Virginia causes of action. That was one of the elements that we were fighting for. Counsel, can you help with this difference? Opposing counsel said, if I understood him correctly, that there were about 1,200 people who opted out who went to court in Virginia and they were denied relief. So far. So far. What role, if any, did those folks play with the people that you represent? Absolutely none. None. I mean, those are, well, most of them are post-November 2nd, 2012 claims, which doesn't have anything to do with the way we are here now. So none of the objectors that you represent were involved in the litigation that was referred to by opposing counsel? No. I represented all of them. Okay. No, no, no. Yeah, I represented all of them. And it's not over. What Mr. Morgan said was the court dismissed the claims for failure to state a claim. And what he didn't say was he refused any right to amend. And, you know, that's being appealed. Were you involved in that litigation at all? I was. The people in Virginia? Yes, sir. So you're representing the people who were defeated there and maybe going somewhere else, and also the people that are presumably still part of the class you would like. Correct. And help me again. On what basis were they denied relief? According to what Mr. Morgan told you, a failure to state a claim. But the court also refused to allow any amendment, and we think that's error. And what was the claim that was attempted to be asserted? Well, again, that's a case that's post-November 2nd, 2012, but it's very similar to these claims. And what's the status of that claim where no amendment was permitted? Well, it's going to be appealed on that basis to the Supreme Court. Okay, so you've already through the Fourth Circuit. That's correct. You're asking for cert on the question as to whether an amendment should be permitted. That's correct. Okay. And, counsel, to clarify, I thought I heard opposing counsel said that there were a number of people who opted out of this particular settlement, and they were wrapped in with the post-November 2nd, 2014. So there were some opt-out from this litigation as well as a class of people post-November 2nd, 2014. That's true. The same ruling was made. It's probably somewhere in the record in front of me. Could I have the citation to the Fourth Circuit opinion? I don't have it right in front of me. I can get it obviously for you. In the record. I'm trying to get it. I don't think it's in this record. Oh, it's not in the record. I'd like that citation then, please. Okay. So they start off with their first question, was the settlement fair? They want this court to forget all the requirements and all the protections of class certification and go straight to is the settlement fair? And that's not what the law is. The only difference in choice of law analysis is required for the predominance issue. Can I ask again? I think I asked before, but I'm not sure I got an answer. Are you arguing that a choice of law analysis should have been done on anything but Virginia law? In other words, are you arguing it should have been all 50 states or just Virginia? Well, I think the burden of proof is on the class proponent to show that there is a predominance of common issues of law and fact. And the class, the party that's moving for the class has that burden. And therefore, in a nationwide settlement class, yes, I think you do. I think there is that requirement. Yes, I think there is. I don't think that you can find predominance of common issues of law and fact unless you know what law applies. And I think this court has held that, and I think other courts have held that. Where have we held that other than in this case? Not in this case. In this case, we did hold that, though. The panel did. But where else was it held? Well, I have citations on that. I think the Washington Mutual case has a whole list of cases that say that. This, of course, is a California Supreme Court case. But they go into that issue saying that predominance requires a choice of law analysis to know whether there are common issues of law and fact that prevail. The applying California law is limited by the Phillips-Patron case, whether it's the causes of action or the settlement agreement. We had a contractual agreement here. Let me just look at my notes. You're a little over your time, so why don't you wrap up? Yes, sir. I think the bottom line is this, and I'll complete it if I may. Certainly. Thank you. You came out here from Lynchburg. We're not going to cut you off. Thank you. A 23B3 class cannot be certified unless the predominance requirement is met. This is so whether it is a litigation class or a settlement class. If it's a settlement class, the court must give more scrutiny to it than if it's a litigation class. Here, the district court strongly found there was no predominance in deciding whether to certify a nationwide litigation class. Therefore, there can be no predominance in the nationwide settlement class. The burden of proof is always on the proponent of the class certification. Here, the proponent of the class certification convinced the court no choice of law analysis was necessary to determine predominance. That is error. The choice of law analysis to determine predominance must be heightened, not abandoned. We believe the case must be reversed. Thank you, counsel. Thank you all for your arguments this afternoon. The case has heard will be submitted for decision, and we'll be in recess. All rise. Thank you.
judges: Kleinfeld, Thomas, W. Fletcher, Berzon, Rawlinson, Bybee, M. Smith, Ikuta, Christen, Nguyen, Hurwitz